**Matthew J. Yium**, OSB No. 054377
E-Mail: matthew.yium@foster.com
**FOSTER GARVEY PC**
Eleventh Floor
121 SW Morrison Street
Portland, Oregon 97204-3141
Telephone: (503) 228-3939
Facsimile: (503) 226-0259

**Nathan G. Steele**, OSB No. 004386
E-Mail: ngs@steelefirm.com
**THE STEELE LAW FIRM**
125 NW Greeley Ave
Bend OR  97703
Telephone: (541) 647-1812
Facsimile (541) 647-1814

Of Attorneys for Defendant James Forrester

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

|  |  |
|---|---|
| JONATHAN KENNEDY,<br><br>       Plaintiff,<br><br>  v.<br><br>CITY OF ROSEBURG, OREGON, *et al*.,<br><br>       Defendants. | Case No. 6:25-cv-02264-AP<br><br><br>**DEFENDANT JAMES FORRESTER'S SPECIAL MOTION TO STRIKE (ORS 31.150) AND MOTION TO DISMISS (FRCP 12(B)(6))**<br><br>*Oral Argument Requested* |

FG: 110086417.8

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

LOCAL RULE 7-1 CERTIFICATION ............................................................................. 1

INTRODUCTION ............................................................................................................... 1

MOTIONS ........................................................................................................................... 3

DISCUSSION ...................................................................................................................... 4

   I. MOTION TO STRIKE UNDER ORS 31.150 ........................................................ 4

      A. Summary of Allegations Against Attorney Forrester ......................................... 4

      B. Background on Anti-SLAPP Statute .................................................................. 5

         1. Purpose of anti-SLAPP law ......................................................................... 5

         2. Application in federal actions ....................................................................... 6

         3. Two-step analytical framework ..................................................................... 7

      C. Step One: Plaintiff's Claims Arise Out of Protected Prosecutorial Activities. ................. 7

         1. Conduct in judicial proceedings .................................................................... 7

         2. Conduct involving matters of public interest ................................................ 9

      D. Step Two: Plaintiff's Malicious Prosecution Claim Fails as a Matter of Law. ............... 10

         1. Absolute prosecutorial immunity under federal law. .................................. 11

         2. Absolute prosecutorial immunity under Oregon law. ................................. 14

         3. Discretionary immunity under the Oregon Tort Caims Act. ...................... 15

         4. The attorney-advocate privilege under *Reynolds* ....................................... 16

      E. Step Two: Plaintiff's Tenth Claim Fails as a Matter of Law. ............................ 18

         1. Oregon law does not recognize this tort claim ........................................... 18

         2. Even if recognized, the claim is barred by the same immunities and privileges. ........ 19

      F. Defendant Forrester is entitled to a mandatory attorney fee award. ................ 19

   II. RULE 12(b)(6) MOTION TO DISMISS ............................................................. 19

      A. Summary ........................................................................................................... 19

      B. Standard Governing Rule 12(b)(6) Motion ..................................................... 20

      C. Plaintiff's Tort Claims are Barred by Immunities and Privileges. .................. 22

DEFENDANT FORRESTER'S MOTION TO STRIKE AND MOTION TO DISMISS

FG: 110086417.8

D.  Plaintiff's *Monell* Claim Fails Because any Policymaking by Attorney Forrester Is Not Attributable to the City. ........................................................................... 22

E.  Plaintiff's *Monell* Claim Against Forrester Must be Dismissed as Redundant............... 25

**CONCLUSION** ....................................................................................................... 26

**CERTIFICATE OF COMPLIANCE**

FG: 110086417.8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................4, 21

*Ashelman v. Pope*,
   793 F.2d 1072 (9th Cir. 1986) .................................................................................11, 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................21

*Botello v. Gammick*,
   413 F.3d 971 (9th Cir. 2005) .................................................................................13, 23

*Boyd v. Reyes*,
   2025 WL 1852449 (D. Or. 2025).................................................................................25

*Buckley v. Fitzsimmons*,
   509 U.S. 259 (1993)................................................................................................11, 13

*Chase v. Gordon, Aylworth & Tami, P.C.*,
   2020 WL 1644310 (D. Or. 2020)..............................................................................6, 11

*Checkley v. Boyd*,
   170 Or. App. 721, 14 P.3d 81 (2000).........................................................................18

*Clatsop County Dist. Att'y v. City of Astoria*,
   266 Or. App. 769, 340 P.3d 71 (2014).......................................................................24

*Davoodian v. Rivera*,
   327 Or. App. 197, 535 P.3d 309 (2023)......................................................................9

*DeHart v. Tofte*,
   326 Or. App. 720, 533 P.3d 829 (2023)......................................................................9

*Donahue v. Bowers*,
   19 Or. App. 50 (1974)..................................................................................................14

*Ewing v. City of Stockton*,
   588 F.3d 1218 (9th Cir. 2009) ...................................................................................22

FG: 110086417.8

*Fauley v. Mosman*,
   2018 WL 664806 (D. Or. 2018)..................................................................................7, 10, 19

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009) .......................................................................................6, 7

*Gibson v. City of Portland*,
   165 F.4th 1265 (9th Cir. 2026) ...................................................5, 11, 13, 16, 21, 26

*Gross v. Jackson Cnty.*,
   2021 WL 2150768 (D. Or. 2021)...............................................................................6, 15

*Heidt v. City of McMinnville*,
   No. 2016 WL 7007501 (D. Or. 2016)..........................................................................23

*AE ex rel. Hernandez v. County of Tulare*,
   666 F.3d 631 (9th Cir. 2012) ......................................................................................22

*Heusel v. Multnomah Cnty. Dist. Attorney's Off.*,
   163 Or. App. 51, 989 P.2d 465 (1999).......................................................................14

*Imbler v. Pachtman*,
   424 U.S. 409 (1976)...................................................................................2, 11, 12, 13

*Jackson v. Mult. Co.*,
   76 Or. App. 540, 709 P.2d 1153 (1985).......................................................14, 18, 19

*Jett v. Dallas Independent School Dist.*
   (1989) 491 U.S. 701......................................................................................................23

*Jurgens v. Columbia Cnty.*,
   2025 WL 563769 (D. Or. 2025)....................................................................................25

*Kalina v. Fletcher*,
   522 U.S. 118 (1997)........................................................................................................11

*Kelly v. McBarron*,
   258 Or. 149, 482 P.2d 187 (1971) ..............................................................................18

*Kentucky v. Graham*,
   473 U.S. 159 (1985)........................................................................................................25

*McMillian v. Monroe County*,
   520 U.S. 781 (1997)...............................................................................20, 22, 23, 24

FG: 110086417.8

*Melendres v. Arpaio*,
    784 F.3d 1254 (9th Cir. 2015)................................................................25

*Milstein v. Cooley*,
    257 F.3d 1004 (9th Cir. 2001) .................................................11, 12, 13

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985)........................................................................2, 5

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978).........................................................................22

*Mouktabis v. Clackamas Cnty.*,
    327 Or. App. 763, 536 P.3d 1037 (2023)..............................................9, 10

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) ..........................................................6, 7, 10

*Praggastis v. Clackamas Cnty.*,
    305 Or. 419, 752 P.2d 302 (1988) ...........................................................15

*Reynolds v. Schrock*,
    341 Or. 338, 142 P.3d 1062 (2006) ..............................................2, 16, 17, 18, 20

*Rogers v. Hill*,
    281 Or. 491, 576 P.2d 328 (1978) ........................................................14, 18

*Rose v. Whitbeck*,
    277 Or. 791, 562 P.2d 188 (1977) ............................................................18

*Rosenthal v. Johnston*,
    2025 WL 1993632 (D. Or. 2025)..............................................................25

*Sadoski v. Mosley*,
    435 F.3d 1076 (9th Cir. 2006) ...............................................................21

*Singh v. McLaughlin*,
    255 Or. App. 340, 297 P.3d 514 (2013)....................................................16

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ...............................................................21

*Staten v. Steel*,
    222 Or. App. 17, 191 P.3d 778 (2008)........................................................6

*Tallman v. Spencer*,
　2026 WL 496434 (D. Or. Feb. 23, 2026)...............................................................7, 19

*Tennyson v. Children's Servs. Div.*,
　308 Or. 80, 775 P.2d 1365 (1989) ..........................................................................14

*Watts v. Gerking et al*,
　111 Or. 641, 222 P. 318 (1924) .........................................................................14, 15

*Weiner v. San Diego County*,
　210 F.3d 1025 (9th Cir. 2000) ..........................................................................23, 24

*Wickenkamp v. Hostetter Law Grp., LLP*,
　2016 WL 10677908 (D. Or. 2016)...........................................................................10

*Will v. Michigan Dep't of State Police*,
　491 U.S. 58 (1989)....................................................................................................25

*Wolfe v. City of Portland*,
　566 F. Supp. 3d 1069 (D. Or. 2021) ........................................................................25

*Zweizig v. Nw. Direct Teleservices, Inc.*,
　2016 WL 5402935 (D. Or. 2016)...............................................................................6

**Statutes**

ORS 31.150 (4) .............................................................................................................7

ORS 31.152(6) ...........................................................................................................6, 9

ORS 221.336................................................................................................................8

ORS 221.339(5) .......................................................................................................8, 24

ORS 801.020(11)(a)-(b).............................................................................................10

## LOCAL RULE 7-1 CERTIFICATION

The undersigned counsel certify that they conferred with plaintiff's counsel in a good-faith effort to resolve the issues raised by these motions, but were unable to do so.

## INTRODUCTION

Plaintiff Jonathan Kennedy brings this civil-rights action arising from a traffic stop and events that followed, including alleged unlawful arrest, search and seizure, and medical procedures on the evening of December 5, 2023.

Plaintiff also sues the City of Roseburg's public prosecutor, James Forrester ("attorney Forrester"), arising out of his prosecution of misdemeanor charges of Driving Under the Influence of Intoxicants (DUII) against plaintiff in Roseburg Municipal Court nearly a month *after* the traffic stop, arrest, and alleged medical procedures. The claims against attorney Forrester are confined to activities that are classic functions of a prosecutor protected by absolute immunity and privileges including: deciding whether to file a charge, evaluating the evidence supporting that charge, communicating regarding possible disposition, continuing the prosecution, and dismissing the case.

Plaintiff's Complaint asserts three claims against attorney Forrester: (1) "Wrongful Initiation and Continuation of Criminal Proceedings" (Tenth Claim) (Compl. ¶¶ 183–185); (2) Malicious Prosecution (Eleventh Claim) (Compl. ¶¶ 186–190); and (3) a 42 U.S.C. § 1983 *Monell* claim alleging municipal liability against attorney Forrester in his official capacity (Fifth Claim) (Compl. ¶¶ 143–149).

All three claims against attorney Forrester fail as a matter of law and must be dismissed for reasons apparent on the face of the Complaint.

DEFENDANT FORRESTER'S MOTION TO STRIKE AND MOTION TO DISMISS
Page 1 of 27

First, the Tenth and Eleventh state-law tort claims are categorically barred by three long-settled immunities and privileges: (1) absolute prosecutorial immunity; (2) discretionary immunity under the Oregon Tort Claims Act; and (3) the attorney-advocate privilege recognized in *Reynolds v. Schrock*, 341 Or. 338, 142 P.3d 1062 (2006).  A prosecutor is absolutely immune from civil liability for conduct "intimately associated with the judicial phase of the criminal process."  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). That immunity is functional and categorical for advocacy; it does not turn on alleged motive, and it protects prosecutors not merely from ultimate liability, but from the burdens of litigation itself.  *Id*. at 427–28; *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).[1]

Second, the Fifth Claim fails as a matter of law because any policymaking by attorney Forrester is not attributable to defendant City of Roseburg ("the City").  For purposes of municipal liability under *Monell*, the question whether an official acts on behalf of the State or a municipality turns on state law.  Under Oregon law, when a city attorney prosecutes criminal charges, he exercises the same prosecutorial authority as a district attorney, which is a quintessential sovereign function of the State, not the municipality.

Third, the Section 1983 official capacity claim should be dismissed as duplicative of the claims against the City.  An official-capacity suit is in all respects, other than name, a suit against the governmental entity itself.  Because the City is already named as a defendant and plaintiff asserts municipal liability directly against the City on the same *Monell* theory, the official-capacity claim against Forrester is redundant.

---

[1]Plaintiff's Tenth Claim labeled "Wrongful Initiation and Continuation of Criminal Proceedings" does not exist independent of the tort of malicious prosecution under Oregon law; but even if the tort were recognized, it would be barred by the same immunities and privileges.

DEFENDANT FORRESTER'S MOTION TO STRIKE AND MOTION TO DISMISS
Page 2 of 27

Attorney Forrester brings two motions founded upon the legal infirmities pervading plaintiff's claims: (1) a special motion to strike plaintiff's state-law tort claims under Oregon's anti-SLAPP statute (ORS 31.150); and (2) a Rule 12(b)(6) motion to dismiss all of plaintiff's claims with prejudice for failure to state legally cognizable claims.

## MOTIONS

Defendant Forrester moves pursuant to ORS 31.150 (Oregon's Anti-SLAPP law) to strike plaintiff's Tenth and Eleventh Claims for Relief labeled "Wrongful Initiation and Continuation of Criminal Proceedings" and "Malicious Prosecution." If the Court grants the motion to strike, or if plaintiff voluntarily dismisses any portion of his claims in response to this motion, defendant Forrester requests a mandatory award of reasonable attorney fees and costs pursuant to ORS 31.152(3) and (4).

In addition, attorney Forrester moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all of plaintiff's claims with prejudice for failure to state claims, and alternatively, to dismiss plaintiff's Fifth Claim as duplicative of plaintiff's claims against the City. Because the defects in plaintiff's claims are legal rather than factual, dismissal with prejudice is warranted under Rule 12(b)(6) if the Court declines to strike the claims under ORS 31.150.

In support of his motions, attorney Forrester relies upon the subjoined memorandum, and the record and file herein.

FG: 110086417.8

## DISCUSSION

### I.    MOTION TO STRIKE UNDER ORS 31.150

#### A.    Summary of Allegations Against Attorney Forrester

For purposes of this motion only, attorney Forrester accepts as true the Complaint's well-pleaded factual allegations, but not legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Complaint alleges that plaintiff was stopped on December 5, 2023 and arrested on suspicion of DUII. Compl. ¶¶ 24, 75. The allegations concerning Forrester arise only *after* the traffic stop, arrest, search, and related medical conduct that form the basis of plaintiff's claims against eight other defendants, including the City, its Chief of Police, three Roseburg Police Department officers, Mercy Medical Center, and two Mercy Medical Center nurses.

The claims against attorney Forrester are confined to his prosecution of a DUII charge in Roseburg Municipal Court. Plaintiff alleges attorney Forrester:

- Filed misdemeanor DUII charges in Roseburg Municipal Court. Compl. ¶ 75;

- Reviewed and assessed evidence concerning the DUII charge. Compl. ¶ 78;

- Engaged in compromise discussions with defense counsel, including an alleged offer to dismiss the charges if plaintiff agreed not to sue the City. Compl. ¶¶ 79–80;

- Continued prosecution of the charges in municipal court. Compl. ¶¶ 77, 187–188; and

- Dismissed the DUII charges due to witness unavailability and standard of proof issues. Compl. ¶¶ 77, 187-188.

Thus, the Complaint challenges purely quintessential prosecutorial advocacy undertaken within a judicial proceeding: charging, evaluating evidence, communicating about disposition, continuing prosecution, and dismissal.

FG: 110086417.8

Equally important is what the Complaint does not allege. Plaintiff does not—and cannot—allege that Forrester participated in the traffic stop or arrest; directed any officer's actions; gathered evidence; conducted or supervised investigation; fabricated evidence; swore to a probable-cause affidavit; acted as a complaining witness; or performed administrative or policymaking functions untethered to the prosecution itself. *See generally* Compl. ¶¶ 24–74 (traffic stop and hospital allegations directed to law-enforcement and medical defendants); Compl. ¶¶ 75–80, 183–190 (allegations concerning Forrester confined to charging, reviewing evidence, communicating about resolution, continuing prosecution, and dismissal).

Rather, the Complaint repeatedly alleges that attorney Forrester was at all times acting within the course and scope of duties as public prosecutor for the City in judicial proceedings. Compl. ¶¶ 14, 75-86, 134, 143-149, 184, 187-189.[2]

Thus, the Complaint implicates only those functions for which absolute immunity and privileges attach as a matter of law. Because immunity is an entitlement not to stand trial or face the burdens of litigation, not merely a defense to liability, the Complaint's own factual limitations make this a pleading-stage case. *Gibson v. City of Portland*, 165 F.4th 1265, 1275 (9th Cir. 2026) ("Governmental parties to a suit may claim not only immunity from *liability*, but immunity from *the suit itself*") (citing *Mitchell*, 472 U.S. at 526).

### B.    Background on Anti-SLAPP Statute

#### 1.    Purpose of anti-SLAPP law

The purpose of Oregon's anti-SLAPP statute is "to provide for the dismissal of claims against persons participating in public issues, when those claims would be privileged under case

---

[2]The Complaint contains two paragraphs numbered "14." Citations in this brief to "¶ 14" refer to the first instance.

law, before the defendant is subject to substantial expenses in defending against them." *Staten v. Steel*, 222 Or. App. 17, 29, 191 P.3d 778 (2008), *rev. den.*, 345 Or. 618 (2009); ORS 31.152(6) ("The purpose of the procedure established by this section and ORS 31.150 and 31.155 is to provide a defendant with the right to not proceed to trial in cases in which the plaintiff does not meet the burden specified in ORS 31.150 (4).").

The Oregon Legislature enacted ORS 31.150 to prevent collateral civil actions targeting protected petitioning activity. Where, as here, plaintiff's claims arise from a defendant's participation in judicial proceedings involving matters of public interest, the statute authorizes early dismissal before the burdens of litigation are imposed. The premise is institutional: when a lawsuit targets protected petitioning activity, the harm is not limited to the risk of an adverse judgment. The harm is the litigation process itself, including discovery, depositions, cost, and the diversion of time imposed as a penalty for participating in governmental or judicial proceedings.

### 2. Application in federal actions

Although anti-SLAPP motions are a procedural mechanism to vindicate existing substantive rights under Oregon state law, they are regularly applied in this Court and in the Ninth Circuit. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834-35 (9th Cir. 2018), *amended*, 897 F.3d 1224 (2018); *Gardner v. Martino*, 563 F.3d 981, 991 (9th Cir. 2009) (applying Oregon's anti-SLAPP statute); *Chase v. Gordon, Aylworth & Tami, P.C.*, 2020 WL 1644310, at *1 (D. Or. 2020), *report and recommendation adopted,* 2020 WL 3977608 (D. Or. 2020); *Gross v. Jackson Cnty.*, 2021 WL 2150768, at *1 (D. Or. 2021), *report and recommendation adopted*, 2021 WL 2142601 (D. Or. 2021); *Zweizig v. Nw. Direct Teleservices, Inc.*, 2016 WL 5402935, at *4 (D. Or. 2016).

DEFENDANT FORRESTER'S MOTION TO STRIKE AND MOTION TO DISMISS
Page 6 of 27

The statute permits a defendant to file a special motion to strike which "requires the court to enter a judgment of dismissal without prejudice if the motion is granted," along with entering an attorney fee award in favor of the moving party mandated by ORS 31.152(3).  *Gardner*, 563 F.3d at 986; *Tallman v. Spencer*, 2026 WL 496434, at *3 (D. Or. Feb. 23, 2026) (granting defendants' motion for attorney fees after prevailing on anti-SLAPP motion); *Fauley v. Mosman*, 2018 WL 664806, at *8 (D. Or. 2018) (awarding defendants attorney fees on granting of anti-SLAPP motion).

### 3. Two-step analytical framework

An anti-SLAPP motion requires the Court to conduct a two-step process.  ORS 31.150(4); *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009) (describing two-step process).

At step one, defendant must show plaintiff's claims arise from conduct described in ORS 31.150(2)(a)–(d), including activities in judicial proceedings on matters of public interest.

At step two, the burden shifts to plaintiff to show "there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case."  ORS 31.150(4).  When an anti-SLAPP motion challenges the legal sufficiency of a claim, the court applies Rule 12(b)(6) standards of review.  *Planned Parenthood*, 890 F.3d at 834.

In conducting its two-step analysis, the Court "shall consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  ORS 31.150(4).

### C.    **Step One: Plaintiff's Claims Arise Out of Protected Prosecutorial Activities.**

#### 1. Conduct in judicial proceedings

ORS 31.150(2)(a)(A) protects "[a]ny oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding

authorized by law."

Plaintiff's own pleading places every alleged act by attorney Forrester squarely within this category, including allegations of:

- Filing of a charging instrument in municipal court (Compl. ¶¶ 75, 184)
- Review and evaluation of evidence (*Id.* ¶ 78)
- Speaking with defense counsel regarding possible dismissal of the proceedings (*Id.* ¶ 78, 79, 80, 81)
- Continued prosecution of the proceedings (*Id.* ¶ 77, 187)
- Dismissal of the charges terminating the judicial proceedings (*Id.* ¶¶ 83-85).

There can be no legitimate dispute that the underlying criminal case in municipal court constituted "judicial proceedings" or "proceedings authorized by law." ORS 221.336 (establishing municipal courts); ORS 221.339(5) (city attorney has authority to prosecute violation of any offense created by statute that is subject to the jurisdiction of municipal court).

Nor can plaintiff seriously dispute whether the alleged filings and statements of attorney Forrester were connected to the underlying criminal judicial proceeding. Plaintiff appears to admit as much: the Complaint acknowledges attorney Forrester was at all times acting within the course and scope of his performance of duties as public prosecutor for the City in criminal municipal proceedings. Compl. ¶¶ 14, 75-86, 134, 143-149, 184, 187-189.

Step one of the anti-SLAPP analysis is satisfied because plaintiff's tort claims arise from statements and documents in a judicial proceeding. To defeat the motion and avoid a mandatory attorney fee award, plaintiff must demonstrate a probability of prevailing on those claims, including overcoming the immunities and privileges discussed below.

2.  <u>Conduct involving matters of public interest</u>

In addition to satisfying subsection (2)(a)(A), plaintiff's claims implicate speech and petitioning in connection with an issue of public interest under ORS 31.150(2)(a)(D) (encompassing "[a]ny other conduct in furtherance of the exercise of… the constitutional right of petition… or free speech… in connection with a public issue or an issue of public interest.")

Plaintiff's claims clearly arise out of alleged speech and filings of attorney Forrester in municipal court proceedings as discussed in the section above.  In addition, the alleged speech and filings involved an issue of "public interest."  The Oregon Legislature has directed that this provision should "be liberally construed in favor of the exercise of the rights" of expression, petition, and other conduct protected by ORS 31.150(2).  ORS 31.152(6).  Accordingly, the term "public interest" is interpreted to have a broad and "common-sense meaning—namely, an issue that is of interest to the public." *DeHart v. Tofte*, 326 Or. App. 720, 742, 533 P.3d 829 (2023), *rev den,* 371 Or. 715 (2023) (citations omitted).

Oregon courts have held that issues of "interest to the public" include speech and petitioning involving violation of laws protecting the public.  *Mouktabis v. Clackamas Cnty.*, 327 Or. App. 763, 774, 536 P.3d 1037 (2023).  In *Mouktabis*, the Court held that a private actor's report to law enforcement regarding a perceived violation of a Family Abuse and Prevention Act ("FAPA") restraining order on the advice of counsel constituted conduct in connection with an issue of public interest.  *Id*.  The Court reasoned that the purpose of FAPA was to prevent acts of domestic violence, and "preventing acts of family violence is a matter of public interest.  Likewise, the public has an interest in whether court orders are being ignored or violated."  *Id.* ; *see also Davoodian v. Rivera*, 327 Or. App. 197, 212-213, 535 P.3d 309 (2023) (finding that

private, two-person communication regarding alleged sexual assault by an employee of a prominent public hospital was related to a matter of general public interest and speech should be protected to ensure continued public discourse).

Like *Mouktabis*, the prosecution of DUII offenses are grounded in the public's interest in roadway safety and protection of travelers.  ORS 801.020(11)(a)-(b) (purpose of vehicle code is to provide "maximum safety" for travelers and deny privileges to persons indifferent to safety and welfare of others).  The enforcement of traffic laws, including prohibitions against driving under the influence of intoxicants, is a matter of public safety and public concern. Attorney Forrester's conduct in prosecuting the underlying DUII charges involved a matter of public interest falling within the protections of Oregon's anti-SLAPP statute.

### D.      <u>Step Two</u>: Plaintiff's Malicious Prosecution Claim Fails as a Matter of Law.

At step two, a plaintiff opposing an anti-SLAPP motion in federal court must overcome substantive defenses that would prevent the plaintiff from properly stating a claim under Rule 12(b)(6).  *Planned Parenthood*, 890 F.3d at 834 (holding that the plaintiff's burden at step two in the anti-SLAPP analysis is to properly state a claim).  To meet his burden at step two, plaintiff must overcome the privileges and immunities that bar his claims.  *Id*.; *see also Pauley v. Mosman*, 2018 WL 664806, at *6 (D. Or. 2018) (finding plaintiff failed to demonstrate a probability she will prevail on her fraud claim because claim arose out of documents protected by litigation privilege); *Wickenkamp v. Hostetter Law Grp., LLP*, 2016 WL 10677908, at *19 (D. Or. 2016), *adopted*, 2016 WL 10677905 (2016) (striking plaintiff's claim under anti-SLAPP because plaintiff's showing on second step was "inadequate to establish that she has a probability

FG: 110086417.8

of successfully overcoming the absolute litigation privilege"); *Chase v. Gordon, Aylworth &*

*Tami, P.C.*, 2020 WL 1644310, at *5 (D. Or. 2020), *adopted*, 2020 WL 3977608 (2020).

      1.  <u>Plaintiff's claims are barred by absolute prosecutorial immunity.</u>

Plaintiff's claims arise from classic prosecutorial functions for which attorney Forrester is

absolutely immune.  The doctrine of absolute prosecutorial immunity protects all conduct of

prosecuting attorneys that is "intimately associated with the judicial phase of the criminal

process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) (absolute prosecutorial immunity bars

Section 1983 claim against public prosecutor); *Gibson*, 165 F.4th at 1281 (affirming Rule

12(b)(6) dismissal of Section 1983 claims against prosecuting district attorneys on grounds of

absolute immunity).

Absolute immunity covers prosecutorial decisions about "whether, when, and what kind

of cases should be charged," which necessarily involves "a complex interplay of law, facts,

resources, and intuition." *Gibson*, 165 F.4th at 1281 (citations omitted).

The inquiry is functional.  Courts examine "the nature of the function performed," not the

actor's title or the plaintiff's characterization of intent. *Buckley v. Fitzsimmons*, 509 U.S. 259,

269 (1993).  When the function is advocacy in a judicial proceeding—initiating a prosecution,

presenting the State's case, evaluating evidence for charging and continuation decisions,

engaging in plea or disposition discussions, or deciding whether to dismiss—immunity is

categorical.  *Imbler*, 424 U.S. at 430–31; *Buckley*, 509 U.S. at 273; *Kalina v. Fletcher*, 522 U.S.

118, 129 (1997); *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc). Allegations

of malice, lack of probable cause, or improper purpose do not defeat absolute immunity. *Imbler*,

424 U.S. at 427–28; *Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001).

Absolute prosecutorial immunity is essential to the judicial process for many reasons:

"(1) to allow prosecutors to focus their energies on prosecuting, rather than defending lawsuits, (2) to enable prosecutors to exercise independent judgment in deciding which suits to bring and conducting them in court; (3) to preserve the criminal justice system's function of determining guilt or innocence by ensuring that triers of fact are not denied relevant (although sometimes conflicting) evidence because of prosecutors' fear of suit; and (4) to ensure fairness to defendants by enabling judges to make rulings in their favor without the subconscious knowledge that such rulings could subject the prosecutor to liability."

*Milstein v. Cooley*, 257 F.3d 1004, 1007–08 (9th Cir. 2001) (citations omitted).

The doctrine is not intended to reward prosecutors, but to protect the integrity of the criminal justice system from the distortive effects of post hoc civil litigation on charging decisions and prosecutorial judgment.  *Imbler*, 424 U.S. at 424–29.[3]

Attorney Forrester denies there is any merit to plaintiff's claim and strongly denies engaging in any "malicious prosecution."  But even assuming the truth of plaintiff's Complaint for purposes of this motion only, every allegation involves purely prosecutorial activities intimately associated with the underlying judicial proceedings protected by absolute immunity.

The Complaint alleges attorney Forrester filed a charging instrument initiating judicial proceedings in municipal court.  Compl. ¶¶ 75, 184. The filing of charges is a quintessential prosecutorial act subject to immunity.  *Imbler*, 424 U.S. at 430-431.  The Complaint further alleges attorney Forrester reviewed and assessed documentary evidence and communicated with defense counsel regarding the merits of the case.  Compl. ¶¶ 76-78.  A prosecutor is absolutely immune from any liability arising out of his "professional evaluation of the evidence assembled

---

[3] Prosecutorial immunity applies if where it may leave a "genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (citation omitted).

by the police." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

The Complaint also alleges attorney Forrester communicated with defense counsel regarding possible disposition, including civil compromise.  Compl. ¶¶ 79, 80, 81.  Case-management and disposition decisions, including plea discussions and dismissal negotiations are central prosecutorial functions integral to the prosecutor's role as an advocate responsible for evaluating charges and determining whether, and on what terms, a case should proceed or conclude.  *Imbler*, 424 U.S. at 430–31.

The Complaint alleges that attorney Forrester continued to prosecute plaintiff despite allegedly knowing the City lacked probable cause to support the charges.  Compl. ¶¶ 77, 81, 85, 187, 189.  Decisions whether to continue criminal prosecution—even where motivated by malice—are protected by absolute immunity.  *Gibson*, 165 F.4th at 1281 (citing *Milstein*, 257 at 1008.

Finally, the Complaint alleges that attorney Forrester dismissed the case without proceeding to trial.  Compl. ¶¶ 77, 82-85.  Decisions about when and why to prosecute or dismiss a case are classic exercises of protected prosecutorial judgment.  *Gibson*, 165 F.4th at 1281-82; *Botello v. Gammick*, 413 F.3d 971, 977 (9th Cir. 2005) (decision not to prosecute case and conveyance of non-prosecution decision are protected judicial functions).

On the facts pleaded, the challenged conduct falls squarely within the scope of absolute prosecutorial immunity.  Plaintiff therefore cannot establish a probability of prevailing on any tort claims seeking damages for that conduct.

2. <u>Absolute prosecutorial immunity under Oregon law bars plaintiff's claims.</u>

Oregon law, like federal law, recognizes absolute immunity for officials performing prosecutorial functions in initiating and pursuing judicial proceedings. Oregon courts have long held that a prosecutor is absolutely immune with respect to his or her decision as to "when, how, and against whom to proceed." *Watts v. Gerking et al*, 111 Or. 641, 657, 222 P. 318, *rev'd on other grounds on reh'g* 111 Or. 654, 657, 228 P. 135 (1924); *Rogers v. Hill,* 281 Or. 491, 499 n. 8, 576 P.2d 328 (1978) (noting that public prosecutors enjoy "absolute privilege" with respect to initiation of criminal prosecutions); *Tennyson v. Children's Servs. Div.*, 308 Or. 80, 86, 775 P.2d 1365 (1989) (explaining that state prosecutors performing "functions that are 'integral parts of the judicial process,' " including "initiating criminal prosecutions, ... are entitled to absolute immunity"); *see also Jackson v. Mult. Co.*, 76 Or. App. 540, 545–46, 709 P.2d 1153 (1985); *Heusel v. Multnomah Cnty. Dist. Attorney's Off.*, 163 Or. App. 51, 57, 989 P.2d 465 (1999).

Oregon follows the Restatement (First) of Torts § 656, which states unequivocally that, "[a] public prosecutor acting in his official capacity is absolutely privileged to initiate or continue criminal proceedings." *Donahue v. Bowers*, 19 Or. App. 50, 55 (1974) (citing 3 Restatement Torts, 392, Sec. 656).

Here, plaintiff challenges only charging, continuation, and disposition decisions undertaken in the course of a municipal prosecution. Those are quintessential prosecutorial functions. Under Oregon law, such conduct is absolutely protected, and plaintiff's state-law tort claims are barred on the face of the Complaint.

3.    Discretionary immunity under the OTCA bars plaintiff's claims.

In addition to absolute prosecutorial immunity, discretionary immunity under the Oregon Tort Claims Act (OTCA) independently bars plaintiff's state-law tort claims.

ORS 30.265(6)(c) of the OTCA provides, "[e]very public body and its officers, employees and agents acting within the scope of their employment or duties… are immune from liability for: ***[a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

Prosecutorial decisions are "not wholly ministerial, but instead require[] the exercise of discretion in "how and who to prosecute or sue in the name of the state." *Watts*, 111 Or. at 657. Thus, the Oregon Supreme Court has held that "common-law immunity for judicial and quasi-judicial acts is part of those immunities preserved for discretionary acts under the OTCA." *Praggastis v. Clackamas Cnty.*, 305 Or. 419, 426-427, 752 P.2d 302 (1988); see *Jackson*, 76 Or. at 545–46 (applying OTCA discretionary immunity to deputy district attorney).  The "quasi-judicial" immunity recognized under the OTCA includes the absolute immunity shielding public prosecutors from liability for malicious prosecution claims arising out of their exercise of prosecutorial discretion as recognized in *Watts*.  *Praggastis*, 305 Or. at 427, n. 5.

Plaintiff's claims arise entirely from acts involving the exercise of prosecutorial discretion by attorney Forrester, not ministerial acts.  The challenged conduct involves decisions whether to initiate charges, how to evaluate the evidence, whether to continue prosecution, how to negotiate disposition, and whether to dismiss. Compl. ¶¶ 75, 78–81, 83–85, 134, 143–149. Those decisions require the exercise of judgment and weighing of policy considerations, including evidentiary sufficiency, allocation of prosecutorial resources, and public interest, i.e.

the "complex interplay of law, facts, resources, and intuition." *Gibson*, 165 F.4th at 1281

(citations omitted).  Such decisions fall within ORS 30.265(6)(c).

Discretionary immunity under the OTCA independently bars liability on the face of the

Complaint, and plaintiff cannot demonstrate a probability of prevailing.

4.    The attorney-advocate privilege under *Reynolds* bars plaintiff's claims.

In addition to the immunities discussed above, plaintiff's state law claims are barred by

the privilege recognized in *Reynolds v. Schrock*, 341 Or. 338, 142 P.3d 1062 (2006), which

protects attorney Forrester in his role as advocate for his client.

In *Reynolds*, the Oregon Supreme Court held that an attorney acting within the course

and scope of representation of his client is protected from liability for torts committed against a

third-party.  *Id.*; *see also Singh v. McLaughlin*, 255 Or. App. 340, 350–51, 297 P.3d 514 (2013)

(applying *Reynolds* privilege to malicious prosecution claim involving attorney's alleged

initiation of false arrest qualifying for exception).[4]

The *Reynolds* privilege applies to an attorney's representation in "[m]yriad business

transactions, as well as civil, *criminal*, and administrative *proceedings*, requir[ing] that the client

have the assistance of a lawyer."  *Reynolds*, 341 Or. at 349.  The rule places the burden on the

plaintiff to show that the lawyer was acting outside the scope of the lawyer-client relationship.

*Id.* at 351.

Like prosecutorial immunity, the *Reynolds* privilege is necessary "because safeguarding

---

[4] *Singh* is distinguishable in that it involved an attorney who allegedly knowingly encouraged his client to initiate a false police report, which is a potential crime under Oregon law.

DEFENDANT FORRESTER'S MOTION TO STRIKE AND MOTION TO DISMISS
Page 16 of 27

FG: 110086417.8

the lawyer-client relationship protects more than just an individual or entity in any particular case or transaction; it is integral to the protection of the legal system itself." *Id*. at 349. The *Reynolds* court identified two primary functions for the privilege. First, "lawyers cannot serve their clients adequately when their own self-interest—in these examples, the need to protect themselves from potential tort claims by third parties—pulls in the opposite direction." *Id*. at 350.

The same rationale applies here. A public prosecutor cannot adequately represent his client, a public body obligated to serve and protect the public, if the prosecutor's personal interest in avoiding civil liability could interfere with prosecutorial decision-making. This is the same principle underlying absolute prosecutorial immunity.

The second rationale for the *Reynolds* privilege is that "allowing a claim against the lawyer may raise issues of lawyer-client privilege, if the preparation of an adequate defense for the lawyer would require the disclosure of privileged communications." *Id*. at 350. That concern is present here. The handling of prosecutorial decisions in the criminal case were necessarily based on attorney-client communications between Forrester and his client, the City. Those communications are privileged and central to Forrester's ability to defend against plaintiff's claim.

Plaintiff affirmatively alleges that attorney Forrester acted within the course and scope of his duties as the City's public prosecutor in pursuing the municipal DUII case. Compl. ¶¶ 14, 184, 187–189. The Complaint pleads no facts placing Forrester's conduct outside of duties as advocate for his client. On the face of the pleading, the *Reynolds* privilege provides an

DEFENDANT FORRESTER'S MOTION TO STRIKE AND MOTION TO DISMISS
Page 17 of 27

additional and independent bar to plaintiff's state-law tort claims.[5]

### E.    **Step Two**: Plaintiff's Tenth Claim Fails as a Matter of Law.

#### 1.    Oregon law does not recognize this tort claim.

Plaintiff's Tenth Claim for Relief is labeled "Wrongful Initiation and Continuation of Criminal Proceeding." This claim fails as a matter of law because no such tort claim exists under Oregon law. While wrongful initiation of *civil* proceedings is a well-recognized tort in Oregon, that claim arises out of underlying *civil* proceedings as evidenced by its title.

Oregon recognizes the tort of malicious prosecution as the remedy for the wrongful initiation of underlying *criminal* proceedings. *Rogers v. Hill*, 281 Or. 491, 497, 576 P.2d 328 (1978); *Rose v. Whitbeck*, 277 Or. 791, 562 P.2d 188 (1977), *modified*, 278 Or. 463, 564 P.2d 671 (1977). Courts have described actions for "wrongful initiation of civil proceedings" as the civil analog to a malicious prosecution action. *Checkley v. Boyd*, 170 Or. App. 721, 736, 14 P.3d 81 (2000); *Kelly v. McBarron*, 258 Or. 149, 153, 482 P.2d 187 (1971) (plaintiff's action arising out of wrongful filing of mechanics' lien is "wrongful initiation of a civil suit" which is "the civil counterpart of malicious prosecution"); *Alvarez v. Retail Credit Ass'n of Portland, Or., Inc.*, 234 Or. 255, 259, 381 P.2d 499 (1963) (describing elements of "wrongful initiation of civil proceedings" claim involving wrongful prosecution of *civil* action against another).

While a claim for malicious prosecution may lie for conduct involving wrongful initiation or continuation of criminal proceedings, there is no known independent tort under the label given

---

[5] None of the exceptions to the *Reynolds* privilege are alleged to apply here. *Reynolds*, 341 Or. at 351 (2006) (acts falling outside scope of representation or crime-fraud activities).

to plaintiff's Tenth Claim for Relief.  For that reason, plaintiff cannot establish any probability of prevailing on that claim, and it must be dismissed.

2.  Even if recognized, the claim is barred by the same immunities and privileges.

Even if Oregon law recognized a claim for "Wrongful Initiation and Continuation of Criminal Proceedings," it would be barred by the same immunities and privileges that defeat plaintiff's malicious prosecution claim.

**F.     Defendant Forrester is Entitled to a Mandatory Attorney Fee Award.**

Under ORS 31.152(3) and (4), attorney Forrester is entitled to a mandatory award of reasonable attorney fees and costs if the motion is granted, or if plaintiff voluntarily dismisses any claim, in whole or in part, in response to the motion.  The statute provides that a prevailing defendant "*shall* be awarded reasonable attorney fees and costs."  *Id*. (emphasis added).

Federal courts regularly enforce this mandatory fee provision when granting anti-SLAPP motions.  *See, e.g., Tallman*, 2026 WL 496434, at *3; *Fauley*, 2018 WL 664806, at *8.

**II.     RULE 12(b)(6) MOTION TO DISMISS**

**A.     Summary**

Even if the Court were to deny the Motion to Strike, the claims against attorney Forrester independently fail under Rule 12(b)(6) for a reason that requires no evidentiary development: the Complaint pleads purely prosecutorial advocacy in a judicial proceeding.  The Complaint does not and cannot allege attorney Forrester participated in the traffic stop or arrest; directed any

officer's actions; gathered evidence; conducted or supervised investigation; fabricated evidence; swore to a probable-cause affidavit; acted as a complaining witness; or performed administrative or policymaking functions untethered to the prosecution itself. Rather, plaintiff challenges only acts of quintessential prosecutorial advocacy, which are functions protected by absolute prosecutorial immunity, discretionary immunity, and the *Reynolds* privilege discussed at length in the motion to strike. Because the standard of review on step two of the Motion to Strike and Rule 12(b)(6) are identical, plaintiff's claims must be dismissed under Rule 12(b)(6) if they are not dismissed on anti-SLAPP grounds.

In addition, plaintiff's Section 1983 official capacity claim fails as a matter of law because any policymaking by attorney Forrester is not attributable to the City. For purposes of municipal *Monell* liability, a city attorney's prosecutorial function serves the State of Oregon, not a city, under Oregon law controlling the inquiry. *McMillian v. Monroe County*, 520 U.S. 781, 785–86 (1997). City prosecutors in Oregon exercise the same prosecutorial authority as a district attorney—a quintessential sovereign function of the State. Therefore, any alleged policymaking by attorney Forrester cannot give rise to *Monell* liability against the City, and the claim fails as a matter of law.

Finally, the *Monell* liability official capacity claim against Forrester is duplicative of the claim against the City, and it should be dismissed as redundant.

### B.      Standard Governing Rule 12(b)(6) Motion

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a claim. A court will grant a Rule 12(b)(6) motion if, presuming the truth of well-pleaded allegations, the complaint

fails to set forth facts that plausibly entitle a plaintiff to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, to be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient . . . underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

A complaint must allege facts that "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. A claim has "facial plausibility" when factual allegations support "the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Important to this motion, courts will grant a motion to dismiss for failure to state a claim when a defendant establishes immunity on the face of a complaint. *See, e.g.*, *Sadoski v. Mosley*, 435 F.3d 1076, 1077 (9th Cir. 2006). "Governmental parties to a suit may claim not only immunity from *liability*, but immunity from *the suit itself*." *Gibson*, 165 F.4th at 1275 (emphasis in original). Because governmental immunities are immunities from suit and conceptually distinct from the merits of plaintiff's claim, immunity questions should be resolved "at the earliest possible stage in litigation" and "long before trial." *Id*. (citations omitted).

The Court's Rule 12(b)(6) analysis must therefore include consideration of applicable immunities and privileges.

FG: 110086417.8

**C.      Plaintiff's Tort Claims are Barred by Immunities and Privileges.**

Plaintiff's state-law tort claims are barred by the immunities and privileges discussed in Sections I(D)(1) through (4) above, which are incorporated here by reference. Those long-settled defenses independently require dismissal with prejudice under Rule 12(b)(6).

In addition, plaintiff's Tenth Claim is not an independent tort recognized by Oregon law and must be dismissed with prejudice under Rule 12(b)(6). *See* Section I(E)(1), *supra*.

**D.      Plaintiff's *Monell* Claim Fails Because any Policymaking by Attorney Forrester Is Not Attributable to the City.**

Municipal liability under 42 U.S.C. § 1983 exists only when the alleged constitutional violation results from an official municipal policy, practice, or custom attributable to the municipality itself. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978). Section 1983 does not impose *respondeat superior* liability on municipalities; rather, a municipality may be liable only where the execution of its own policy or custom inflicts the alleged constitutional injury. *Id.* at 691–94; *see also AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636–37 (9th Cir. 2012).

A municipality likewise cannot be held liable for actions taken by an official acting on behalf of other public bodies, rather than the municipality. *McMillian*, 520 U.S. at 785–86. Under *McMillian*, the dispositive inquiry is whether the official was acting as a municipal policymaker or as a state official when performing the challenged function. *Id.* at 786. That determination turns on state law and the nature of the function performed, not merely the official's title or employer. *Id.* at 786–87; *see also Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009).

DEFENDANT FORRESTER'S MOTION TO STRIKE AND MOTION TO DISMISS
Page 22 of 27

The inquiry to determine which entity an official represents when acting in a particular capacity is "dependent on an analysis of state law." *McMillian*, 520 U.S. at 787.[6]  Thus, when state law assigns a function to the State, a local official performing that function acts on behalf of the State, and the official's conduct does not constitute municipal policymaking for purposes of *Monell* liability. *Id*. at 793.

The Ninth Circuit has repeatedly applied this principle to the prosecutorial context, recognizing that public prosecutors act on behalf of the State, not local governmental bodies, when exercising prosecutorial functions where state law dictates such function.  *See Weiner v. San Diego County*, 210 F.3d 1025, 1031 (9th Cir. 2000); *Botello v. Gammick*, 413 F.3d 971, 979–80 (9th Cir. 2005).

Here, Oregon law makes the answer to the inquiry clear with respect to city prosecutors. ORS 221.339(5) provides:

> "The prosecution shall be in the name of the state. The city attorney shall have all powers of a *district attorney* in prosecutions under this subsection." (emphasis added)

A district attorney's prosecutorial function in Oregon serves the state, not cities, under clear mandate of ORS 8.660(1): "[t]he district attorney shall… conduct, *on behalf of the state*, all prosecutions for such offenses therein" (emphasis added).

---

[6] This issue is decided by the Court as a matter of law, not fact.  *Jett v. Dallas Independent School Dist.* (1989) 491 U.S. 701, 737 ("[T]he identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury."); *see also Heidt v. City of McMinnville*, No. 2016 WL 7007501, at *12–13 (D. Or. 2016) (Rule 12(b)(6) dismissal of *Monell* claims against district attorney prosecuting on behalf of State of Oregon, not Yamhill County under *McMillian*).

DEFENDANT FORRESTER'S MOTION TO STRIKE AND MOTION TO DISMISS
Page 23 of 27

Oregon courts recognize that under these statutory mandates, when a city attorney prosecutes criminal matters, the attorney exercises the same prosecutorial authority as a district attorney—a quintessential sovereign function of the State. *Clatsop County Dist. Att'y v. City of Astoria*, 266 Or. App. 769, 774–76, 340 P.3d 71 (2014).

Under this framework, criminal prosecutions initiated by a city attorney are brought pursuant to state-law prosecutorial authority equivalent to that exercised by a district attorney. ORS 221.339(5); *Clatsop County Dist. Att'y*, 266 Or. App. at 774–76. When performing those prosecutorial functions, the city attorney acts as a state official exercising sovereign prosecutorial authority, not as a municipal policymaker establishing City policy.

Plaintiff's policymaking allegations directed at attorney Forrester entail the exercise of prosecutorial authority conferred by ORS 221.339 and ORS 8.660(1). Compl. ¶¶ 143-149. Therefore, even if assumed to be true for purposes of this motion, any alleged policymaking by attorney Forrester is not attributable to the City. As a matter of law, such conduct cannot constitute municipal policy or custom, and therefore cannot give rise to municipal liability under Section 1983. *McMillian*, 520 U.S. at 793; *Weiner*, 210 F.3d at 1031.

The Complaint fails to plausibly allege a basis for municipal liability under *Monell*, and the Fifth Claim for Relief with respect to attorney Forrester must be dismissed pursuant to Rule 12(b)(6). Because the defect arises from the legal status of the prosecutorial function under Oregon law, amendment would be futile.

FG: 110086417.8

**E.    Plaintiff's *Monell* Claim Against Forrester Must be Dismissed as Redundant.**

As noted above, plaintiff's Section 1983 *Monell* liability claim (Fifth Claim) is brought against attorney Forrester solely in his official capacity as the City's public prosecutor.  Compl. at p. 32 (title of Fifth Claim as "Monell Liability… Against Defendant[s] Forrester in their Official Capacities").  Throughout the Complaint, plaintiff alleges attorney Forrester was at all times acting in the course and scope of duties as public prosecutor for the City.  Compl. ¶¶ 14, 75-86, 134, 143-149, 184, 187-189.

"[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Melendres v. Arpaio*, 784 F.3d 1254, 1260 (9th Cir. 2015) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); see also *Rosenthal v. Johnston*, 2025 WL 1993632, at *6 (D. Or. 2025) (citing same).  "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Thus, when both a local government officer and the government entity are named in an action under Section 1983, and the officer is named in their official capacity only, the officer is a redundant defendant and should be dismissed upon request of the defendant.  *Jurgens v. Columbia Cnty.*, 2025 WL 563769, at *8 (D. Or. 2025) (quotations omitted); *see also Wolfe v. City of Portland*, 566 F. Supp. 3d 1069, 1089 (D. Or. 2021) (dismissing Section 1983 official capacity claims against City of Portland officials where same claims brought against City as defendant); and *Boyd v. Reyes*, 2025 WL 1852449, at *5 (D. Or. 2025) (dismissing Section 1983 *Monell* claims against nurses of healthcare entity sued in official capacities).

Here, the City of Roseburg is already named as a defendant.  Compl. ¶ 15.  Plaintiff asserts municipal liability directly against the City under *Monell* based on the same alleged policies, customs, and practices as the official-capacity claim against attorney Forrester.  Compl. ¶¶ 143–149.  Because the City is already a defendant and the Section 1983 municipal-liability theory is asserted directly against it, the official-capacity claim against Forrester adds nothing.  It is entirely duplicative.

Because plaintiff's Section 1983 *Monell* liability claim is a claim against the City, the official-capacity claim against attorney Forrester should be dismissed as redundant.[7]

### CONCLUSION

For the foregoing reasons, Defendant James Forrester respectfully requests that the Court:

1)    Grant Defendant's Special Motion to Strike under ORS 31.150 as to the Tenth and Eleventh Claims;

2)    Award mandatory reasonable attorney fees and costs pursuant to ORS 31.152(3);

3)    Grant Defendant's Rule 12(b)(6) Motion to Dismiss and enter an order dismissing with prejudice plaintiff's Fifth, Tenth, and Eleventh Claims.  Because the defects identified above are legal and structural, not factual, dismissal with prejudice is warranted under Rule 12(b)(6) if the Court declines to strike the claims under ORS 31.150.

---

[7]Any request by plaintiff for leave to amend to bring the same claim against attorney Forrester in his individual capacity, should be denied as futile given the absolute prosecutorial immunity barring such claim under the points and authorities discussed in Section I(D)(1).  *Gibson*, 165 F.4th at 1281 (affirming Rule 12(b)(6) dismissal of Section 1983 individual capacity claims against prosecuting district attorneys on grounds of absolute immunity).

DATED this 6th day of March, 2026.

FOSTER GARVEY PC


By /s/ *Matthew J. Yium*
    Matthew J. Yium, OSB No. 054377
    Eleventh Floor
    121 SW Morrison Street
    Portland, Oregon 97204-3141
    Tel:   (503) 228-3939
    Fax:  (503) 226-0259
    E-Mail:  Matthew.Yium@foster.com


THE STEELE LAW FIRM


By /s/ *Nathan G. Steele*
    Nathan G. Steele, OSB No. 004386
    125 NW Greeley Ave
    Bend OR  97703
    Tel:  (541) 647-1812
    Fax: (541) 647-1814
    E-Mail: ngs@steelefirm.com

Pursuant to LR 11-1 (b), consented to electronic signature in this document March 6, 2026


Attorneys for Defendant James Forrester

DEFENDANT FORRESTER'S MOTION TO STRIKE AND MOTION TO DISMISS
Page 27 of 27

FG: 110086417.8

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable page-count limitation under LR 7-2(b) because it does not exceed 35 pages, excluding the caption, table of contents, table of authorities, signature block, exhibits, and any certificates of counsel.

*s/ Matthew J. Yium*
Matthew J. Yium, OSB No. 054377

FG: 110086417.8